MARILYN FINLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finley v. Commissioner
Docket No. 10284-75.
United States Tax Court
T.C. Memo 1977-9; 1977 Tax Ct. Memo LEXIS 431; 36 T.C.M. (CCH) 53; T.C.M. (RIA) 770009; January 17, 1977, Filed Marilyn Finley, pro se. Stanley H. Smith, Jr., for the respondent. *432 SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1973 in the amount of $98.07. The issue for decision is whether respondent properly disallowed a portion of the business expenses claimed by petitioner for the calendar year 1973. FINDINGS OF FACT Petitioner, an individual who resided in Atlanta, Georgia at the time her petition in this case was filed, timely filed a Federal income tax return for the calendar year 1973. Several years prior to 1973, petitioner had moved to Atlanta, Georgia to engage in the occupation of selling building products to the construction industry. For approximately 11 years prior to moving to Atlanta, petitioner had been an architectural sales representative and had called on many of the architectural firms throughout the United States. Her sales work involved selling the same products that she had been promoting to architects. Her line included approximately 100 different items, mostly in the field of waterproofing, such as epoxies, polyurethanes, roofing materials, curing compounds, sealants, and caulkings. In connection with her *433 work, petitioner would call on architects in an effort to have them specify products which she sold in buildings they were designing, or at least when specifying a product other than the one she sold, to place in the specification such a product or equal. Where a product handled by petitioner was not specifically specified by name for building construction, but was an acceptable product under the general specification of the type of product made by the architect, petitioner would attempt to sell her product to the contractor or subcontractor doing the work on the building. In connection with petitioner's work, it was necessary for her to be aware of the nature of products which were competitive to the products she sold.In order to keep informed as to the products which were available to compete with the products she sold, petitioner each month bought a copy of Engineering News Record, Architectural Record, and Progressive Architecture. The total cost of these three magazines in 1973 was at least $8 per month. Petitioner would go through these magazines and find products either advertised or about which articles were written which she considered might be competitive to the products *434 she was selling and write for literature on those products and maintain a file to use in connection with her attempt to sell her products as better suited for use by various contractors. Also on occasions these magazines would carry articles with respect to the products petitioner was selling and she would show these articles to various architects and at times purchase a magazine containing such an article to give to the architect. In addition to the three magazines that petitioner purchased week, she would from time to time purchase other magazines when such magazines contained articles with respect to the products which she sold or competing products or companies that manufactured such products. During 1973, she, for this reason, purchased four monthly editions of Fortune magazine. Also during 1973 she purchased a number of copies of one edition of Time magazine which carried an article on John Portman. She had sold the waterproofing and roofing products on all of John Portman's buildings and so she took the various copies ofTime magazine which she purchased containing this article to various architects in Atlanta and asked them to read the article stating that she had sold all *435 of the waterproofing and roofing materials on all of John Portman's buildings. During 1973 petitioner also regularly purchased copies of the two Atlanta, Georgia newspapers in order to read any articles therein concerning the construction business and advertisements with respect to prospective construction to obtain names of prospective customers for the products she sold. During 1973 petitioner expended at least $125 for magazines and newspapers which she used for business purposes. During 1973 petitioner from time to time entertained various architects and contractors, both in restaurants and in her home. Petitioner expended a total of $75.91 in various Atlanta restaurants entertaining various architects and contractors. She had receipts for these expenditures noting the name of the person entertained and the business purpose of the entertainment. In addition, petitioner entertained various architects and contractors in her home throughout the year 1973. Her home was used at least 300 hours and not over 500 hours during 1973 for such entertainment. On January 6, 1973, petitioner purchased $54.16 worth of alcoholic beverages which she set aside to use only when entertaining *436 business guests. On February 17, 1973, petitioner expended $25.10 for food for a luncheon for eight individuals whose names she placed on a list who were either architects or engaged in the construction business. The purpose of the luncheon was to show a film to these individuals with respect to the products petitioner sold and this film was shown. Part of the whiskey which petitioner had purchased on January 6, 1973 was used at this luncheon. Petitioner had a receipt from Colonial Stores in the total amount of $25.10 for food she purchased for the February 17, 1973 luncheon. She made a notation of the use of the food on the receipt. On March 17, 1973, petitioner gave a St. Patrick's Day cocktail party. Petitioner testified that all guests at this cocktail party were either contractors or architects with whom she had business associations and that her reason for the entertainment was to develop her contacts with these customers or prospective customers. Petitioner had a store tape for a total amount of $22.03 dated March 16, 1973 on which she had placed the notation "St. Patrick's Day Cocktail Party." On September 17, 1973, petitioner spent $9.48 for liquor. She had an adding *437 machine tape showing this amount on which she wrote in handwriting "9-17-73 Tower Pkg. Cust. Enter." No other notations were made on this tape. Petitioner gave a number of luncheons and some other cocktail parties throughout the year for various customers or prospective customers, but did not have any receipts with respect to the expenditures for these functions. The liquor used for these functions came primarily from the year's supply she bought January 6, 1973, for $54.16. Sometimes the food would not be specifically purchased for these functions, but she would prepare the food from groceries she had on hand that she had purchased along with her personal groceries. Petitioner's only office was the office she maintained in her home. The room used by petitioner was used by her for no other purpose and it comprised 25 percent of the total space in the apartment that she rented. Petitioner claimed on her tax return $112 for depreciation on her office furniture and respondent did not disallow any portion of this claimed deduction. She claimed as a deduction 25 percent of the apartment rent and utility bills she paid and no portion of these amounts was disallowed. Petitioner *438 paid $76 for insurance with respect to the furnishings in her home and claimed 25 percent of this amount as applicable to her office and none of this was disallowed by respondent. In addition, petitioner claimed that her living room and dining room furniture, including linens, towels, crystal, and china, was partially used in her business since she entertained customers in her home. She claimed that depreciation on these items for the year 1973 was $133 and that 25 percent of this amount was applicable to business use of her living room and dining room. Respondent disallowed this claimed deduction. In 1973 petitioner spent $13 to have the lock on the door to her apartment replaced and claimed 25 percent of this amount as applicable to business, and respondent disallowed this amount. The following schedule shows the business expenses claimed by petitioner on her return, the amount allowed and the adjustments made by respondent in disallowing $402.26: Business Expense
Per Return
Allowed
Adjusted
Depreciation
$ 112.00
$ 112.00
$ -0-
Office in the Home
461.00
424.00
37.00
Telephone & Answering Service
1,058.00
1,022.78
35.22
Postage
104.00
104.00
-0-
Photos
53.00
53.00
-0-
Customer Entertainment
217.00
-0-
217.00
Dues
212.00
205.50
6.50
Stationery
71.00
89.46
18.46 CR
Periodicals
125.00
-0-
125.00
Totals
$2,413.00
$2,010.74
$402.26
*439 At the trial, respondent conceded that petitioner had substantiated the $35.22 of telephone expenses disallowed and the $6.50 of dues. ULTIMATE FACTS Petitioner is entitled to a $125 deduction as business expenses for cost of periodicals and $177.20 as expense for customer entertainment. Respondent properly disallowed $36.50 of the home office expense claimed by petitioner and, therefore, petitioner is properly entitled to deduct $424.50 for home office expense. OPINION Petitioner claimed 25 percent of the amount she determined as depreciation on her living room and dining room furniture and furnishings and the lock placed on her front door as part of her home office expense. However, these amounts were obviously not a cost of maintaining an office in her home. At the trial petitioner contended that 25 percent of the $133 she computed as depreciation on the furniture and furnishings in her living room and dining room and the $13 she paid for a lock on the front door of her apartment were properly deductible because of her use of the living room and dining room in her apartment for entertainment purposes. [1] Therefore, in our view, in order to be entitled to deduct 25 percent *440 of the depreciation on her living room and dining room furnishings and 25 percent of the cost of installing a lock on her door, petitioner would have to show that her front door and living room and dining room were facilities used for entertaining. In order to be entitled to a deduction for entertainment expense petitioner must show compliance with the provisions of section 274, I.R.C. 1954, [2] and the regulation issued pursuant thereto. Section 1.274-2(a) (2), Income Tax Regs., provides as follows: (2) Entertainment facilities. Except as provided in this section, no deduction otherwise allowable under chapter 1 of the Code shall be allowed for any expenditure with respect to a facility used in connection with entertainment unless the taxpayer establishes-- (i) That the facility was used primarily *441 for the furtherance of the taxpayer's trade or business, and (ii) That the expenditure was directly related to the active conduct of such trade or business. Such deduction shall not exceed the portion of the expenditure directly related to the active conduct of the taxpayer's trade or business. Section 1.274-2(e), Income Tax Regs., further elaborates on expenditures with respect to entertainment facilities. [3] This section of the regulations, in general, provides that for a facility to be used primarily for entertainment so as to entitle a taxpayer to deductions with respect to depreciation and operating costs, it must be shown that the facility was used primarily in furtherance of the taxpayer's trade or business. This fact may be shown by establishing that more than 50 percent of the total calendar days of the use of the facility were days of business use. *442 Petitioner in this case testified that she rarely used her living room and dining room except for entertaining. However, there is no direct showing of the number of days her living room and dining room were used for entertaining as compared to the days these rooms were used for other purposes. Apparently petitioner's claim for a deduction for 25 percent of the cost of the lock and 25 percent of the depreciation she computed on her living room and dining room furniture and furnishings was based on these items being part of her home office expense. The parties stipulated that petitioner used her home for business entertaining in 1973 not less than 300 hours or no more than 500 hours. If only one function was held on any one day and each function lasted 3 to 4 hours, petitioner would not have used her living room and dining room for entertaining more than half the days in 1973. The general impact of the record is that she used the apartment for business entertaining far less than half the days in 1973. Although petitioner claims she used her living room and dining room for little else than business entertaining, the record shows that these rooms were part of her home and she made *443 the normal use of them a person living alone was likely to make. We have considered petitioner's testimony and the other evidence of record and we conclude on the basis of all the evidence of record that petitioner has failed to establish that the door to her apartment on which the lock was placed and her living room and dining room were used primarily for business purposes during 1973. Therefore, petitioner has failed to show that she is entitled to a deduction for a part of the cost of the lock and part of the depreciation on the living room and dining room furnishings as a buiness expense of entertaining. Section 1.274-5, Income Tax Regs., sets forth the substantiation requirements which a taxpayer must meet in order to be entitled to deductions for entertainment expense. Section 274(d) provides that no deduction for entertainment expense shall be allowed unless a taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement the amount of such expense, the time and place of the entertainment, the business purpose of the expense, and the business relationship to the taxpayer of persons entertained in accordance with regulations prescribed *444 by the commissioner. Section 1.274-5(c) of the Income Tax Regulations[4] spells out in detail the type of records necessary to substantiate an entertainment expenditure. *445 In our view, petitioner here has properly substantiated with records and other evidence corroborating her own testimony, entertainment expenses in the year 1973 of $177.20. We, therefore, hold that she is entitled to deduct this amount of the claimed entertainment expense. Petitioner had no records at all to substantiate $30.32 of the $217 deduction she claimed for customer entertainment. She had a tape showing items totaling $9.48. She testified this was spent for liquor and had written on the tape "9-17-73 Tower Pkg. Cust. Enter." However, petitioner had no records to show who she entertained around September 17, 1973, or the purpose of any entertainment around that date. Petitioner has failed to substantiate the expenditure of the $9.48 for entertainment under the requirement of section 274(d) and section 1.274-5(c), Income Tax Regs.
Respondent conceded at the trial that petitioner had properly substantiated as deductible entertainment expense the $75.91 she spent in restaurants. The store's tape for the $25.10 for the January 17 luncheon and the $22.10 for the St. Patrick's Day cocktail party had sufficient notations made at the time the purchases were made to meet the requirements *446 of the regulations. We consider the stipulation that petitioner entertained for business purposes at least 300 hours during the year 1973 plus the liquor store tape showing purchases of $54.16 on January 6, 1973 to be sufficient corroboration of petitioner's testimony that the $54.16 was spent for basically a year's supply of liquor which she set apart and used only for business entertaining. Since petitioner has substantiated within the requirements of section 274(d) and the regulations issued pursuant thereto only $177.20 of the deduction she claimed for customer entertaining, we hold that respondent properly disallowed $39.80 of the deduction for entertainment expense claimed by petitioner on her return. Decision will be entered under Rule 155. Footnotes
1. Respondent in disallowing $37 of petitioner's claimed home office expense rounded 25 percent of $146 to $37. However, since other determinations by respondent are carried out to the penny, we have determined that the proper disallowance should have been $36.50. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
3. Sec. 1.274-2(e), Income Tax Regs., provides as follows: (e) Expenditures with respect to entertainment facilities.-- (1) In general. Any expenditure with respect to a facility used in connection with entertainment shall not be allowed as a deduction except to the extent it meets the requirements of paragraph (a) (2) of this section. (2) Facilities used in connection with entertainment-- (i) In general. Any item of personal or real property owned, rented, or used by a taxpayer shall (unless otherwise provided under the rules of subdivision (ii) of this subparagraph) be considered to constitute a facility used in connection with entertainment if it is used during the taxable year for, or in connection with, entertainment (as defined in paragraph (b) (1) of this section). Examples of facilities which might be used for, or in connection with, entertainment include yachts, hunting lodges, fishing camps, swimming pools, tennis courts, bowling alleys, automobiles, airplanes, apartments, hotel suites, and homes in vacation resorts. (ii) Facilities used incidentally for entertainment. A facility used only incidentally during a taxable year in connection with entertainment, if such use is insubstantial, will not be considered a "facility used in connection with entertainment" for purposes of this section or for purposes of the recordkeeping requirements of section 274(d). See sec. 1.274-5 (c) (6) (iii). (3) Expenditures with respect to a facility used in connection with entertainment--(i) In general.The phrase "expenditures with respect to a facility used in connection with entertainment" includes depreciation and operating costs, such as rent and utility charges (for example, water or electicity), expenses for the maintenance, preservation or protection of a facility (for example, repairs, painting, insurance charges), and salaries or expenses for subsistence paid to caretakers or watchmen. In addition, the phrase includes losses realized on the sale or other disposition of a facility. * * *
(4) Determination of primary use--(i) In general. A facility used in connection with entertainment shall be considered as used primarily for the furtherance of the taxpayer's trade or business only if it is established that the primary use of the facility during the taxable year was for purposes considered ordinary and necessary within the meaning of sections 162 and 212 and the regulations thereunder. All of the facts and circumstances of each case shall be considered in determining the primary use of a facility. Generally, it is the actual use of the facility which establishes the deductibility of expenditures with respect to the facility; not its availability for use and not the taxpayer's principal purpose in acquiring the facility. Objective rather than subjective standards will be determinative. If membership e5titles the member's entire family to use of a facility, such as a country club, their use will be considered in determining whether business use of the facility exceeds personal use. The factors to be considered include the nature of each use, the frequency and duration of use for business purposes as compared with other purposes, and the amount of expenditures incurred during use for business compared with amount of expenditures incurred during use for other purposes. No single standard of comparison, or quantitative measurement, as to the significance of any such factor, however, is necessarily appropriate for all classes or types of facilities. For example, an appropriate standard for determining the primary use of a country club during a taxable year will not necessarily be appropriate for determining the primary use of an airplane. However, a taxpayer shall be deemed to have established that a facility was used primarily for the furtherance of his trade or business if he establishes such primary use in accordance with subdivision (ii) or (iii) of this subparagraph. Subdivisions (ii) and (iii) of this subparagraph shall not preclude a taxpayer from otherwise establishing the primary use of a facility under the general provisions of this subdivision. * * *.t (iii) Entertainment facilities in general. A taxpayer shall be deemed to have established that-- (a) A facility used in connection with entertainment, such as a yacht or other pleasure boat, hunting lodge, fishing camp, summer home or vacation cottage, hotel suite, country club, golf club or similar social, athletic, or sporting club or organization, bowling alley, tennis court, or swimming pool, or (b) A facility for employees not falling within the scope of section 274(e) (2) or (5)
was used primarily for the furtherance of his trade or business if he establishes that more than 50 percent of the total calendar days of use of the facility by, or under authority of, the taxpayer during the taxable year were days of business use. Any use of a facility (of a type described in this subdivision) during one calendar day shall be considered to constitute a "day of business use" if the primary use of the facility on such day was ordinary and necessary within the meaning of section 162 or 212 and the regulations thereunder. For the purposes of this subdivision, a facility shall be deemed to have been primarily used for such purposes on any one calendar day if the facility was used for the conduct of a substantial and bona fide business discussion (as defined in paragraph (d) (3) (i) of this section) notwithstanding that the facility may also have been used on the same day for personal or family use by the taxpayer or any member of the taxpayer's family not involving entertainment of others by, or under the authority of, the taxpayer.↩
4. Sec. 1.274-5(c), Income Tax Regs., provides as follows: (c) Rules for substantiation--(1) In general. A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute clear proof of an expenditure for travel, entertainment, or gifts referred to in section 274. A record of the elements of an expenditure made at or near the time of the expenditure, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure supported by sufficient documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in subparagraph (2) of this paragraph. To obtain a deduction for an expenditure for travel, entertainment, or gifts, a taxpayer must substantiate, in accordance with the provisions of this paragraph, each element of such an expenditure. (2) Substantiation by adequate records--(i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner. (ii) Account book, diary, etc. An account book, diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure. (a) Made at or near the time of the expenditure.↩ For purposes of this section, the phrase "made at or near the time of the expenditure" means the elements of an expenditure are recorded at a time when, in relation to the making of an expenditure, the taxpayer has full present knowledge of each element of the expenditure, such as the amount, time, place and business purpose of the expenditure and business relationship to the taxpayer of any person entertained. * * *